**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

> SOUTHERN DISTRICT OF MISSISSIPPI
> **FILED**
> AUG 28 2025
> ARTHUR JOHNSTON
> BY _____ DEPUTY

**WOODLANDS PROPERTY HOLDINGS, LLC
AND BLUE MAGMA RESIDENTIAL, LLC**                    **PLAINTIFF(S)**

**V.**                               CIVIL ACTION NO. 3:25-cv-654-DPJ-ASH

**JXN WATER, INC.**                                        **DEFENDANT**

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs Woodlands Property Holdings, LLC and Blue Magma Residential, LLC file their Complaint for Injunctive and Declaratory Relief against Defendant JXN Water, Inc., and in support would state as follows:

### I. PARTIES

1.     Plaintiff Woodlands Property Holdings, LLC is an owner and operating entity for the Jackson apartment complex known as Park at St. Andrews ("St. Andrews"). It is a Delaware company registered to do business in Mississippi with its principal place of business in Florida.

2.     Plaintiff Blue Magma Residential, LLC ("Blue Magma") is the property management company for St. Andrews and five other Jackson apartment complexes. Blue Magma is a Florida company registered to do business in Mississippi with its principal place of business in Florida.

3.     Defendant JXN Water, Inc. ("JXN Water") is a Mississippi corporation with its principal place of business in Jackson, Mississippi.

## II. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Certain claims for relief arise under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, and the Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.  More particularly, Section 9(b) of the Interim Stipulated Order establishing JXN Water's authority over the City of Jackson's water system provides that, despite immunities that may apply with respect to status as an officer of the Court, suits may be filed against JXN Water "without leave of this Court" if permitted by 28 U.S.C. § 959(a).  Section 959(a) expressly provides that federal receivers "may be sued, without leave of the Court appointing them, with respect to any of their acts or transactions in carrying on the business connected with such property," i.e. the operation of Jackson's water system.

5.      The declaratory and injunctive relief requested by Plaintiffs is authorized under 28 U.S.C. §§ 2201 & 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6.      Venue is proper in this division as JXN Water and the properties at issue are all located in this division.

## III. PRELIMINARY STATEMENT AND BASIS FOR REQUESTED INJUNCTIVE RELIEF

7.      Apartment complexes are vital to meet the housing needs of Jackson's 153,701 residents. According to Census data, more Jacksonians now live in rental housing (51%—32,029 units) than in owner-occupied housing (49%—30,832 units).

And the majority of people who rent their housing live in apartment complexes. There are 15,530 apartments at Jackson's 110 largest apartment complexes alone.

8.     Unlike other properties accused of withholding tenant payments, the 6 Jackson apartment complexes managed by Blue Magma have paid over $1.4 million in water bills since 2022. The 200-unit Park at St. Andrews ("St. Andrews") has paid more than the $686,767 collected from tenants for high, but predictable expenses for trash collection ($184,119) and pest control ($26,608) and inconceivably high water bills ($859,743.50), but still owes a disputed water balance.

9.     Unlike other more higher profile properties, St. Andrews immediately sought to confirm the validity of the first high bills in 2022, which never came, and then repeatedly asked to get bills when they stopped. St. Andrews was then confronted with a more than $260,000 bill reporting usage 9 times higher than in early 2022. St. Andrews spent over $170,000 on leak investigations and plumbing repairs in a proactive attempt to identify usage issues contributing to the bills, which activities continue.

10.     St. Andrews does not generate the revenue to pay all past and continuing high bills produced by JXN Water's tiered rate structure, which charges much more for water used by Jackson residents who live in apartment complexes than in houses. St. Andrews has incurred per occupied unit charges of more than $180 as compared to the $36 usage charges for JXN Water's "average residential customer" who lives in a house. St. Andrews cannot in good conscience raise tenants' expenses even higher to cover fundamentally unfair water bills. If a good property

like St. Andrews with a current occupancy rate of 97.5% cannot cover all disputed water bills, then many other apartment complexes essential to meet Jackson's housing needs are in the same position.

11.    JXN Water issued disconnection notices with August payment deadlines to 4 properties managed by Blue Magma. According to JXN Water, these properties have a single, non-negotiable option to accept the validity of, and pay, their entire disputed balance over 6 months, plus high current charges, or have water service disconnected immediately.

12.    However, all elements necessary for injunctive relief to prevent the disconnection of water service are present: (1) irreparable harm to Plaintiffs' business and reputation if tenants are forced to move after water is disconnected; (2) no adequate remedy to prevent water disconnection; (3) likelihood of success that JXN Water's tiered rate structure and collection activities are unconstitutional and violative of Mississippi law against rate discrimination; and (4) public interest in avoiding disconnections of the tenants' only source of water.

13.    **Unconstitutional Tiered Rate Structure.**  While St. Andrews has had 84% of its monthly water use charged at the highest rate of $16.00 per CCF (748 gallons), all Jackson residents who live in houses are charged at the lowest $6.00 per CCF rate for all water used. St. Andrews originally collected $70-$90 from tenants to cover water, trash and pest control expenses, but has increased those charges to $90-$120, even though it would take unsustainably high monthly charges of $170-$190 to cover these expenses. JXN Water did not assess how the tiered rate structure

4

might affect Jackson residents living in apartment complexes before imposing the new rates. JXN Water still does not know what the thousands of Jackson apartment residents pay on average for their water. There is no rational basis for such a dramatic rate disparity for water usage by Jackson residents who live in houses versus apartments.

14. **Arbitrary Rate Disparities Violate Mississippi Law.** JXN Water's rate structure also arbitrarily charges apartment complexes with as few as one meter, like St. Andrews, significantly more for water under the tiered rate structure than apartment complexes that have multiple meters. A rate that discriminates against users of the same class violates clear Mississippi law.

15. **Unconstitutional Collection Activities.** JXN Water does not allow water customers to dispute bills, billing adjustment decisions, or the termination of water service. That JXN Water does not have written billing adjustment and dispute policies also means that JXN Water is not accountable to make consistent, fair water billing decisions based on identifiable criteria. JXN Water has denied apartment complexes leak adjustments it readily gives to individuals. JXN Water has also issued low adjustments without any explanation or readily apparent basis. JXN Water customers have no rights at any stage in the process.

16. Critical to the path forward, JXN Water must recognize the need to adjust bills with higher than expected usage that were delayed for very long periods of time. Properties rely on timely and accurate bills and, as St. Andrews and other Blue Magma properties did, can and do act quickly to address higher than expected

charges.  By merely demanding payment in full, JXN Water robs those properties of the opportunity to avoid thousands and thousands of dollars in charges they could have avoided.

17.    **Claims Supporting Injunctive Relief.**  JXN Water's operation of the City of Jackson's own water system, in the place of the City, assuming the City's responsibilities and obligations in doing so, with the unilateral authority to set water rates, is a "public function" and/or sufficiently connected to and intertwined with State action to subject it to constitutional requirements enforceable under 42 U.S.C. § 1983.

18.    As applied to similarly situated apartment complexes, JXN Water's tiered rate structure violates equal protection because it produces much higher charges for Jackson residents who live in apartments versus houses without any rational basis for such a disparity in rates based on permissible factors.  JXN Water's rate structure also violates Mississippi law because it discriminates against users in the same class by arbitrarily producing much higher charges at large multi-family properties with as few as one meter, like St. Andrews.  In addition, JXN Water's refusal to recognize the rights of water customers to dispute bills, adjustments or the termination of service, let alone its own obligation to adopt and consistently apply written billing dispute and adjustment policies, violates basic due process protections.

19.    **Requested Injunction.**  Plaintiffs request injunctive relief that prevents JXN Water from disconnecting water service at Plaintiffs' apartment

complexes managed by Blue Magma until it adopts and applies constitutional billing adjustment and dispute policies, accounts for the rate disparities at apartment complexes, and extends the payment plan options beyond six (6) months to allow discussion of appropriate billing adjustments and the reasonable time necessary to allow Plaintiffs to pay reasonable amounts owed. Plaintiffs do not seek to prohibit JXN Water from collecting reasonable charges until these conditions are met.

### Six Properties Managed by Blue Magma

20.    Blue Magma manages St. Andrews, Park at Queens Court ("Queens"), Park at Newhaven ("Newhaven"), Park at Sussex ("Sussex"), Park at Marsala ("Marsala") and Park at Inverness ("Inverness").  The water charges and usage amounts have been far from uniform at these 6 properties, whether evaluated on a per property, per account/meter, or per unit basis.

21.    St. Andrews is a 200-unit apartment complex located at 2119 Woodland Way (39209). St. Andrews has 1 water meter (4-inch diameter), receives 1 monthly water bill covering all water usage at the property, and incurs a single water availability charge of $640 per month.[1] St. Andrews has paid $460,043.80 towards its water bills and still owes a balance of $435,699.70.  St. Andrews utilized local plumbing contractors before engaging an out-of-state consultant to do a comprehensive property assessment, which is set to conclude in a few weeks with a

---

[1] The water availability charge is based on the size of the meter: 5/8" ($20 per month); 1" ($30 per month); 1.5" ($100 per month); 2" ($160 per month); 4-inch ($320 per month); 6" ($640 per month); and 8-inch ($1,280 per month). St. Andrews has incurred a monthly water availability charge associated with a 6" meter even though there is a 4" meter installed at the property.

property wide toilet rebuild the property hopes will lower bills. St. Andrews received a final disconnection notice dated August 4, 2025.

22.    Newhaven is a 186-unit apartment complex located at 220 Edgewood Terrace Drive (39206). Newhaven has 3 water meters, receives 3 monthly water bills covering all water usage at the property, and incurs total monthly water availability charges of $1,280. Newhaven has paid $358,673.27 in water bills and owes a balance of $309,029.68. Newhaven has now initiated its own comprehensive property assessment using the same out-of-state consultant as St. Andrews. Newhaven received two final disconnection notices dated July 24, 2025.

23.    Marsala is a 199-unit apartment complex located at 1805 Hospital Drive (39204). Marsala has 5 water meters, typically receives 5 monthly water bills covering all water usage at the property, and incurs a total monthly water availability charge of $1,600. Marsala has paid $306,354.66 towards its water bills and still owes $422,781.40. The property has also engaged the same consultant as St. Andrews and Newhaven. Marsala received 3 final disconnection notices dated July 30, 2025.

24.    Inverness is a 432-unit apartment complex located at 5880 Ridgewood Road (39211). Upon information and belief, Inverness has 14 water meters. The billing frequency across all 14 accounts has not been uniform. The total monthly water availability charge appears to be $4,320. Inverness agreed to a payment plan on July 1, 2025, but that payment plan was not logged by JXN Water at that time. Inverness received 9 disconnection notices dated July 25, 2025. JXN Water has now

placed Inverness on a 6 month payment plan, and Inverness has already paid the first installment.

25.    Queens is a 287-unit apartment complex located at 2840 Robinson Street (39209).  Queens has 1 water meter and receives 1 monthly bill covering all water usage at the property.  At all relevant times, Queens bills have estimated water usage.  The property incurs a single water availability charge of $1,280 per month. Queens has a zero balance.

26.    Sussex is a 117-unit apartment complex located at 5155 Keele Street (39206).  Although Sussex has 3 water meters, the significant majority of usage is billed under a single meter.  Sussex receives 3 monthly water bills covering all water usage at the property.   Until recently, Sussex incurred a total monthly water availability charge of $960.  In August 2025, Sussex received a fourth water bill that included an unusual $3,600 water availability charge ($200 per month) for the property's two fire hydrants dating back to February 2024.   Sussex has paid $80,297.24, but still owes a balance of $123,739.00.  Sussex has not received a final disconnection notice.

## A.    Rate History for Jackson Residents Living in Houses Versus Apartments.

27.    Water usage rates have changed three times since 2021.  Prior to JXN Water's involvement, the City charged all water customers the same rates.  In early 2022, the City raised those rates by 20% from $7.68 per CCF (or 748 gallons) to $9.21 per CCF.  JXN Water estimates that the "average residential customer" uses 6 CCF

(or 4,488 gallons) per month.  That means such a customer's water usage charge went from $46.08 to $55.26 in early 2022.

28.    In February 2024, JXN Water changed the rate structure altogether. JXN Water imposed four volumetric rate tiers that essentially charge more per gallon the more water is used at a property.  Under the current rates, all water used by Jackson residents who live in houses is charged at the lowest $6.00 per CCF rate. The next $12.00 per CCF rate only applies if a customer uses more than 8 households' worth of water.  The majority of water used at large properties like St. Andrews is charged at the highest $16.00 per CCF rate.

29.    JXN Water's current rates produce dramatically higher water usage charges for Jackson residents using the exact same amount of water who live in houses versus a 200-unit apartment complex like St. Andrews – $36 per house and $89.50 per apartment:

| Rate Period | Water Usage | Rate per CCF | Usage Charge Per House |
|---|---|---|---|
| Ending 1/14/22 | 6 CCF | $7.68 | $46.08 |
| 1/14/22-1/31/24 | 6 CCF | $9.21 | $55.26 |
| 2/1/24-Present | 6 CCF | $6.00 | $36.00 |
| Proposed | 6 CCF | $7.48 | $44.88 |

| Rate Period | Water Usage (200 * 6 CCF) | Rate per CCF | Usage Charge Per Apartment | Usage Charges Total |
|---|---|---|---|---|
| Ending 1/14/22 | 1,200 CCF | $7.68 | $46.08 | $6,497.28 |
| 1/14/22- 1/31/24 | 1,200 CCF | $9.21 | $55.26 | $7,791.66 |
| 2/1/24- Present | 1,200 CCF | | $89.50 | $17,900 (Total) |
| 1st tier | 50 CCF | $6.00 | | $300 |
| 2nd tier | 100 CCF | $12.00 | | $1,200 |

| | | | | |
|---|---|---|---|---|
| 3rd tier | 200 CCF | $14.00 | | $2,800 |
| 4th tier | 850 CCF | $16.00 | | $13,600 |
| Proposed Rates | 1,200 CCF | | $111.59 | $22,317.50 (Total) |
| 1st tier | 50 CCF | $7.48 | | $374 |
| 2nd tier | 100 CCF | $14.96 | | $1,496 |
| 3rd tier | 200 CCF | $17.45 | | $3,490 |
| 4th tier | 850 CCF | $19.95 | | $16,957.50 |

30.    While the disparity is in usage charges is even larger under the proposed rates – $44.88 per house and $111.50 per apartment – JXN Water's January 2024 Financial Management Plans called for 5 additional rate increases over the next 9 years.

31.    In its reports, JXN Water repeatedly discusses how its rates affect Jackson's "average residential customer."  But none of the thousands of Jackson residents who live in apartments meet that definition.  JXN Water took no inventory of the number of Jackson apartments when it imposed the tiered rate structure.  Nor did JXN Water consider how the new rate structure would affect apartment complexes, let alone the Jackson residents who live there.

32.    JXN Water also assesses customers a water availability charge intended to cover the operational, maintenance and other costs of services that "do not change with the amount of water used by customers."  The normal residential charge is $40, but the charges vary at apartment complexes.  These charges at Blue Magma's six properties range from $640 to $4,320.

**B.    Park at St. Andrews**

33.    The on-the-ground reality at St. Andrews is much worse than that the above hypothetical bills, let alone the $4,700.13 "typical" bill associated with a 4" meter identified in a JXN Water contractor's after-the-fact, June 2024 revenue estimation memo.  St. Andrews' lowest monthly bill since the February 2024 rate change was $23,078.45 and its highest was $36,528.55.

34.    The rate impact at St. Andrews is exacerbated by the new meter installed in April of 2022. Actual measured water usage on two non-estimated bills in early 2022, immediately before the meter was installed, showed monthly usage of 213.84 CCF and 244.99 CFF.  The first full bill after the meter was installed measured 7 times more water used, or 1,588.89 CCF.

35.    St. Andrews was rightfully concerned that its new meter was the problem.  Jackson had been dealing with well known meter and billing issues.  In immediate response to the first high bill, the property went to the City water department many times to determine the reason for such high readings.  The City ultimately agreed to check the meter and advised that bills would stop until its review was completed.  The property paid four high bills under the new meter and had a zero balance in August 2022, when the bills stopped.  St. Andrews and other properties repeatedly asked for bills while they were delayed for a year or longer.

36.    Believing the ~$4,500 monthly bills from early 2022 were a better estimate, the property was blindsided by a February 2024 from JXN Water showing a new total balance of $261,769.19.  St. Andrews contacted JXN Water about the high

bills at that time.  JXN Water responded that a leak was to blame for the high bills without explaining why the meter was ruled out as a contributing factor.

37.    St. Andrews had timely addressed plumbing issues as they arose and did not have a reason to suspect a leak.  Nevertheless, the property also immediately investigated the newly reported high usage.  From the end of 2021 through April of 2024, the property spent $77,803.84 on plumbing-related work.

38.    On May 2, 2024, St. Andrews requested JXN Water adjust the bills but JXN Water refused to do so citing an ongoing alleged leak.  It was not until 2025 that JXN Water provided internal daily usage data demonstrating that the property's repair work immediately addressed the approximate 287,000 gallon leak in early January 2024 represented by the spike in usage below:



39.    When it denied the adjustment, JXN Water explained that the property's only option to avoid the disconnection of water service was to agree to a 6 month payment plan and pay the additional high monthly charges as they came due. Without any other apparent options, St. Andrews agreed to the payment plan even though it could not afford it or the ongoing high charges.

40.    By May of 2025, St. Andrews had paid JXN Water an additional $173,938.84. At this point, JXN Water had still not disconnected water service at the multiple higher profile apartment complexes that had refused to make any payments.

41.    In May 2025, JXN Water sent St. Andrews another disconnection notice and instructed the property that it must immediately pay $250,000 or else its water would be disconnected.  On May 15, 2025, St. Andrews sent JXN Water a letter disputing its balance and requesting a formal review.  A JXN Water representative responded that its team would review but indicating JXN Water did not have any bill dispute process.  While it never provided any additional written response, JXN Water did not disconnect water service at that time and the disconnection notices stopped.

42.    Since May 15, 2025, St. Andrews has paid an additional $188,000 towards its water bills.  Regardless, JXN Water sent St. Andrews another final disconnection notice dated August 4, 2025.  JXN Water refuses to recognize any process for St. Andrews to dispute its bills. JXN Water has issued an ultimatum that the property accept the validity of, and pay, all disputed billed amounts over a six month payment plan, together with monthly charges, or water service will be disconnected.

43.    For St. Andrews, agreeing to such a payment plan would involve monthly payments of approximately $102,500, which includes 1/6th of the disputed balance, plus typical monthly charges. St. Andrews simply does not generate remotely enough revenue to cover these costs even though it is a coveted place for Jackson residents to live with a current 97.5% occupancy rate. Given these challenging times, St. Andrews cannot with clear conscience increase its residents' charges even more to cover such fundamentally unfair water bills.

C.    **JXN Water Still has No Written Billing Adjustment and Dispute Policies and Its Collection Activities at Apartment Complexes Have Been Inconsistent.**

44.    JXN Water draws its authority and responsibilities over the City of Jackson's water system from the November 29, 2022, Interim Stipulated Order.[2]  In Section 6 of that order, the Court expressly charged JXN Water to "assume all of the responsibilities, functions, duties, powers, and authority of the City insofar as they affect the City's compliance with" the terms of that order.  Specifically, Section 6(b) of that order gave JXN Water took full control over the water billing and collections from the City.

45.    Section 122-44 of Jackson's Code of Ordinances acknowledges and grants all water customers certain basic rights, including (i) "the right to receive a timely and accurate bill for their water consumption . . . based upon timely and accurate meter readings," (ii) "the right to an adjustment for water consumption

---

[2] The Stipulated Order was amended on April 4, 2023 to clarify that Ted Henefin, the formally appointed Interim Third Party Manager, "may act through JXN Water, Inc. . . . for the purposes of complying of with the" Court's order.

attributable to leaks," (iii) the right to have billing errors corrected, (iv) the right to dispute bills and seek an impartial review of billing disputes before water service could be disconnected, and (v) the right to appeal billing dispute decisions. Expeditious judicial review is likewise guaranteed by basic due process protections enforceable via the state and federal Constitutions.

46.     Although the Stipulated Order gives JXN Water control over the City's water billing system, JXN Water has neither assumed the processes established by City ordinance or issued its own written billing dispute and adjustment policies.

47.     JXN Water's final disconnection does not mention any customer options apartment from quick pay of the full balance to avoid disconnection. The content of St. Andrews' most recent disconnection notice is repeated below:

### FINAL NOTICE

RE:    Resident                LLC WOODLANDS PROPERTY HOLDINGS
       Service Location        2519 WOODLAND WH

**Notice of Disconnection**
Your water, sewer, and sanitation account are now past due. Please be advised that if the amount has not been received by 08/25/25, your service will be disconnected. If you receive this notice, but believe you have already paid in full, please contact our JXN Water Customer Care Center at 601-500-5200, 24 hours, 7 days a week to check your account status.

**Ways to pay**
       online: visit https://jxnwater.com/myaccount, to create an account and pay
       electronically
       for realtime payment posting or you can simply use the camera on your device by
       scanning the QR code on the back page for a faster sign-up process
       in person: at one of the payment locations listed on the back page of this mailing
       auto pay at no additional cost, payments are automatically withdrawn from any
       checking account
       by phone: 877-978-2400, allow one (1) business day or
       by mail, allow up to seven (7) business days to post

**Reconnection**
Visit https://jxnwater.com/myaccount to pay your past due balance plus the $100
reconnection fee in order to restore your service.



| Please return this portion with your payment. | |
| Account Number | Due Date |
| --- | --- |
| 0762529784 | 08-25-25 |
| **BALANCE DUE** | $435,338.59 |
| Enter Amount Paid | |



JXN water    P.O. Box 4521
             Jackson, MS 39296

Please make checks payable to JXN WATER
Please include customer account number on check

16

48.     Upon information and belief, JXN Water did not publicly articulate its adjustment policy in any way until the news media reported on an individual homeowner who received a $130,000 bill attributable to a leak in May 2025.  At that time, a spokesperson gave a media interview stating that JXN Water adjusts bills by looking at the customer's consumption rate over the six months prior to the leak and does not charge for meter usage attributable to the leak.   Such a policy is difficult to reconcile with the experience of St. Andrews, who immediately repaired a huge leak in January 2024, requested an adjustment in May 2024, and was denied any adjustment on account of an ongoing leak.

49.     JXN Water adjusted the balance for another apartment complex, later in 2024,  without regard to its citation of an ongoing leak.  JXN Water, however, offered no rational explanation for the paltry adjustment given, nor was an such basis apparent.  Specifically, JXN Water granted a $16,000 (12.8%) adjustment to more than $125,000 in bills even though the property's repair work reduced usage by more than 50%, to the same levels from before the leak.  JXN Water's adjustment also did not account for the fact the property received estimated bills showing normal usage for five months before a bill based on actual usage with a $72,000 "correction" charge. The property had no opportunity, while receiving estimated bills, to avoid thousands and thousands in usage charges by addressing the issue earlier.

50.     Timely and accurate monthly bills are an important tool to inform properties of the scope of any needed plumbing-related work.  Delayed bills rob those properties of the opportunity to address issues more quickly.  JXN Water's unwritten

adjustment practice fails to account for this prejudice, let alone for the fact it can be exponentially more difficult to find and correct any and all leaks that could be contributing to high usage at a large apartment complex, as compared to a single house.

51.    JXN Water's changing collection practices for apartment complexes have been difficult to track.  Although JXN Water threatened disconnection of water service to St. Andrews if it did not agree to a payment plan in May 2024, JXN Water did not disconnect service at some very high-profile apartment complexes reportedly making no payments at all.  St. Andrews agreed to the payment plan, paid what it could, and avoided disconnections.

52.    In May of 2025, a spokesperson gave a media interview signaling JXN Water's priority to "really start[] to go after" the apartment complexes "that will not make contact with us" and "who refuse to pay" anything towards what is owed.  That description did not apply to St. Andrews.

53.    In June of 2025, JXN Water reportedly announced plans to sue apartment complexes on a list of properties with the highest balances, but no suits followed.

54.    JXN Water then began sending many more disconnection notices to apartment complexes, including St. Andrews, Newhaven, Marsala and Inverness.  This time, despite the announced priorities a few weeks earlier, JXN Water began disconnecting water service for properties making payments that had established an open line of communications.

55.    JXN Water published a statement on its website that "[s]hut-offs have begun for multi-family apartment complexes with delinquent bills" and further offered the following "clarity" about the shutoff practices:

> 1.    The property management companies are contacted multiple times by our office, and a notice of disconnection is issued in advance.  This in in line with our policy to ensure property owners have ample opportunity to address any payment issues.

> 2.  If no action is taken to resolve the outstanding balance, the property enters the severance process.   This process is necessary to maintain fairness and accountability across our customer base.

56.    On July 1, 2025, JXN Water disconnected water service to one of the Inverness accounts even though the property did not receive a disconnection notice. Inverness made a $70,000 payment the same day, and  JXN Water restored service.

57.    On July 25, 2025, JXN Water disconnected water service at one account at Newhaven even though the property had made a $70,000 payment on June 30, 2025.  Upon information and belief, the disconnection was not set to occur at that time, as the system did not reflect an "execute" entry typically associated with disconnections.  JXN Water restored water service the same day.

58.    Five days later, on July 31, 2025, JXN Water disconnected water service again at another account at Newhaven.  JXN Water restored water service the same day.

59.    Following these three improvident disconnections, Blue Magma shared with JXN Water its 13 newest disconnection notices, asked JXN Water to double check that no others were outstanding (and received no response), collected

$305,183.45 in payments as JXN Water considered whether to extend payment plans beyond 6 months (which it refused to do), confirmed its payment would stave off disconnections, and then made the large payment on August 13, 2025.

60.    Seven days later, on August 20, 2025, JXN Water disconnected water service at a Newhaven account.  JXN Water restored service the same day, but put Newhaven on a 6 month payment plan even though the property did not agree to one. JXN Water advised that enrolling the property in a payment plan in its system was the only way to override the automated system from disconnecting water service.

61.    Although its apartment shut off policy has not been updated on its website, JXN Water has now determined that the only way for water customers to "take action" to "resolve" an " outstanding balance" is to accept the validity of, and pay, all disputed charges over a 6-month payment plan, together with additional monthly charges.

## IV.  CLAIMS FOR RELIEF

### COUNT 1 - Water Rates Violate Equal Protection as Applied to St. Andrews and Other Similarly Situated Apartment Complexes.

62.    Plaintiffs reallege and incorporate all preceding allegations of the Complaint.

63.    JXN Water must comply with the equal protection clause of the United States Constitution enforceable pursuant to 42. U.S.C. § 1983.

64.    JXN Water may not treat similarly situated persons differently unless the reason bears a rational relationship to a legitimate governmental interest.

65.    As applied to similarly situated apartment complexes, JXN Water's tiered rate structure violates equal protection because it produces significantly higher charges for water used by Jackson residents who live in apartments versus houses without any rational basis for such a disparity in rates based on permissible factors like the costs of providing such service to customers.

65.    That JXN Water needs to set rates high enough to cover the costs of operational expenses and debt service is a valid basis for raising rates, but it is not a justification for differentiating how water customers are charged for their water.  The only apparent basis for the rate differentiation is that JXN Water wanted to preserve the affordability of water for Jackson residents.  Yet the rates produce dramatically different usage charges for Jackson residents who use water in houses versus apartments. JXN Water's own arbitrary justification fails the lowest scrutiny considering the majority of Jackson's residents now live in rental housing and are accountable to cover costs for using water.

66.    Plaintiffs are entitled to a declaratory judgment that JXN Water's tiered rate structure violates equal protection as applied to St. Andrews and other similarly situated apartment complexes.

67.    Plaintiffs are also entitled to an injunction prohibiting JXN Water from disconnecting water service at the Plaintiffs' Jackson apartment complexes until it remedies unconstitutional rates as applied to St. Andrews and other similarly situated apartment complexes.  Plaintiffs are not seeking to enjoin JXN Water's

collection of reasonable monthly water charges until the constitutional violation is remedied.

COUNT 2 – <u>Water Rates Violate Mississippi Law</u>

68.    Plaintiffs reallege and incorporate all preceding allegations of the Complaint.

69.    With respect to municipal water rates like those charged by JXN Water, Miss. Code Ann. § 21-27-7 provides that "rates may not be unreasonably preferential, prejudicial or discriminatory, but shall be sufficient, equitable and consistent in application to each class of users." It is not unlawful to set different rates for <u>different classifications of users</u>, but such rates shall not discriminate "among members <u>of the same classification</u>."

70.    JXN Water's tiered rates apply to all water customers in Jackson, but the rates were intentionally set so that Jackson residents living in homes would incur charges exclusively at the lowest $6.00 per CCF based on reasonably anticipated water usage of 0-50 CCF (or up to 37,400 gallons). Thus, JXN Water applies different rates to those customers living in houses and all other customers that use more water and incur charges at the higher volumetric rate tiers of $12.00 per CCF (51-150 CCF), $14.00 per CCF (151-350 CCF) and $16.00 per CCF (350+ CCF). There is no basis to set rates that produce such disparate charges.

71.    But even as between high water usage customers, like large apartment complexes, JXN Water's rates have the effect of discriminating against those customers in the same "commercial" class. That is because high volume water

customers who use the same amount of water are not charged the same if they do not have the same number of meters. The volumetric rate tiers are applied per meter, not per customer.

72.    JXN Water's rate tier thus produces arbitrary and discriminatory even among high water usage customers, between those who have fewer meters, like St. Andrews, and those who happen to have more. St. Andrews has had 84% of its water usage charged at the highest $16.00 per CCF rate. The water used by St. Andrews' tenants would be much lower if their usage was evenly split between 2 meters ($1,300 difference), 4 meters ($3,900 difference) or 8 meters ($7,849.20 difference).

73.    Plaintiffs are entitled to a declaratory judgment that JXN Water's tiered rate structure discriminates among water users in violation of Mississippi law as applied to St. Andrews and other similarly situated apartment complexes charged excessively at the highest rate tier for water usage.

74.    Plaintiffs are also entitled to an injunction prohibiting JXN Water from disconnecting water service at the Plaintiffs' Jackson apartment complexes until it addresses the discriminatory rate disparities. Plaintiffs are not seeking to enjoin JXN Water's collection of reasonable monthly water charges until such conditions are met.

## COUNT 3 – Procedural Due Process Violations

75.    Plaintiffs reallege and incorporate all preceding allegations of the Complaint.

76. JXN Water must comply with the due process protections set forth in United States Constitution, which are enforceable pursuant to 42. U.S.C. § 1983, and in the Mississippi Constitution.

77. Due process requires that JXN Water give notice and a meaningful opportunity to be heard before impairing protected property interests, like the provision of water services and the collection of reasonable monies for that service. Due process also requires that the process give to water customers be fair and reasonable, which includes the right to dispute JXN Water decisions and the right to expeditious judicial review before protected interests are significantly impaired, such as by disconnection of water service.

78. JXN Water's water billing collection practices violate due process. JXN Water does not recognize the rights of water customers to dispute charges, adjustments, or the disconnection of service, or any review of JXN Water's decisions on the impairment of those protected property interests. JXN Water's current practices with respect to billing decisions, including the disconnection of service, are based on fair, identifiable and consistently enforceable criteria. JXN Water has not even issued any billing dispute and adjustment polices.

79. Plaintiff is entitled to a declaration from the Court recognizing the foregoing JXN Water practices, as applied to Plaintiffs, violate the due process provisions of the United States Constitution and the Mississippi Constitution.

80. Plaintiffs are also entitled to an injunction prohibiting JXN Water from disconnecting water service at the Plaintiffs' Jackson apartment complexes until it

adopts and publicizes constitutional billing dispute and adjustment policies, but that does not prohibit the collection of reasonable monthly water charges. Plaintiffs are not seeking to enjoin JXN Water's collection of reasonable monthly water charges until such conditions are met.

WHEREFORE, for all of the reasons set forth in this Complaint, Plaintiffs demand a trial by jury, and request the following relief:

(i)     Entry of orders declarations that JXN Water's rates and collection processes violate the equal protection of the law and due process guarantees of the United States Constitution and/or the Mississippi Constitution and other federal and state laws, including Miss. Code Ann. § 21-27-7;

(ii)    Entry of orders temporarily, preliminarily and permanently enjoining and restraining Defendant JXN Water, Inc. from disconnecting water service at Plaintiff's apartment complexes until Defendant adopt   Ms constitutional, non-discriminatory billing adjustment and dispute policies, accounts for the rate disparities at apartment complexes, and extends the payment plan options beyond six (6) months to allow discussion of appropriate billing adjustments and a workable opportunity for the properties to pay reasonable amounts owed. Plaintiffs do not seek such relief in a way that prohibits JXN Water from collecting reasonable monthly water charges until the conditions set by the Court are met;

(iii)   Entry of orders permissible under 42 U.S.C. § 1983 to protect Plaintiffs from retaliation by JXN Water for Plaintiffs making claims for the violation of rights protected by federal law and the United States Constitution;

(iv)    Entry of orders awarding Plaintiffs reasonable attorneys' fees upon establishing the above violations of federal law and the United States Constitution, consistent with 42 U.S.C. §§ 1983 and 1988; and

(v)    Any other legal, equitable or general relief the Court deems appropriate to redress or compensate Plaintiffs based on the foregoing claims.

RESPECTFULLY SUBMITTED, this 28th day of August, 2025.

> WOODLANDS    PROPERTY    HOLDINGS,
> LLC AND BLUE MAGMA RESIDENTIAL,
> LLC
>
> By: _____
> Robert B. Ireland, III, MSB # 100708
> WATKINS & EAGER PLLC
> 400 E Capitol Street (39201)
> Post Office Box 650
> Jackson, Mississippi 39205-0650
> Telephone: (601) 965-1900
> Facsimile: (601) 965-1901
> E-Mail: rireland@watkinseager.com
>
> and
>
> By: _____
> Michael V. Cory, Jr., MSB # 9868
> DANKS, MILLER & CORY
> 213 S Lamar Street
> Jackson, Mississippi 39201
> Telephone: (601) 957-3101
> Facsimile: (601) 957-3160
> E-Mail: mc@dmclaw.net
>
> *Attorneys for Plaintiffs*